IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LISA MURPHY PLAINTIFF

v. Civil No. 6:11-cv-06091

SHERIFF CHAD LEDBETTER;
GEORGE WRIGHT; CORP. LINDA
ROWE; SGT. LINGO; AMY MARTIN;
and BRIAN OREL DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Lisa Murphy, pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated in the Arkansas Department of Corrections McPherson Unit. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before me is Defendants Sheriff Chad Ledbetter, George Wright, Corporal Linda Rowe, Sargent Lingo, Amy Martin, and Brian Orel's Motion for Summary Judgment. ECF No. 48. Plaintiff responded.[1] ECF No. 53. After careful consideration, the undersigned makes the following Report and Recommendation.

## I. BACKGROUND

[1] The Court provided Plaintiff with a Notice and requested she indicate whether she would file a response to Defendants's Motion for Summary Judgment or requested the Court's assistance in responding through a Court prepared questionnaire. ECF No. 51. Plaintiff responded to the Notice indicating she would file a response without the Court's assistance (ECF No. 52), and she did so.

During the time at issue in this case, Plaintiff was incarcerated at the Hot Springs County Jail ("HSCJ"). Plaintiff is now incarcerated in the McPherson Unit of the Arkansas Department of Corrections ("ADC"). Plaintiff filed her original Complaint in the Eastern District of Arkansas on December 14, 2011. ECF No. 3. The case was properly transferred to this Court on December 19, 2011. ECF No. 7. Plaintiff filed an Amended Complaint on April 17, 2012. ECF No. 15. Plaintiff filed a second Amended Complaint on June 26, 2012. ECF No. 24.

In her second Amended Complaint, Plaintiff states she has "brought this 42 U.S.C. 1983 Civil action for policy violations, sexual misconduct, sexual harassment, and/or sexual assault, which violates her constitutional rights." ECF No. 24, p. 6. Plaintiff then goes on to specifically list the following allegations: (1) she was detained in the HSCJ, an all male facility, in the mens' bathroom for approximately one month; (2) she was subjected to sexual assault and harassment by "309 inmate"[2] Fears and Defendant Officer Orel told her once "if she did not put on a show she would not get a cigarette, etc.;" (3) she was put on suicide watch without clothing and cared for by male officers and male "309 inmates;" (4) she was denied her medication "numerous times;" (5) she was kept on 24-hour lock down; and (6) she was in constant fear because the 309 inmates were "privy to the jail keys and were allowed to enter her cell at anytime and did enter a number of times." ECF No. 24, p. 6.

Plaintiff claims she was treated with "cruel and unusual punishment" by being held in an all male facility. Additionally, Plaintiff claims Defendants violated their own policy by holding her in their all male facility. Plaintiff also notes she reported the alleged sexual assault and

---

[2] A 309 inmate is an ADC inmate that is being housed at the county jail through the Act 309 Program. This program allows contracts throughout the state of Arkansas for housing and supervision of ADC inmates in county and city jails.

harassment for the first time after she was transferred to the ADC.

Plaintiff then claims Defendants violated her Fourteenth Amendment rights: "Under the equal protection clause every person in the United States, including prisoners are guaranteed 'the equal protection of the law!!" ECF No. 24, p. 8. Plaintiff goes on to list what she believes she needs to show to establish a valid equal protection claim and also notes: "[a]t the initial filing of said suit plaintiff was the only female held in this all male facility. This occurred due to the fact that the defendants were bias toward plaintiff." ECF No. 24, p. 8. Additionally, Plaintiff states that Defendants acted "maliciously and sadistically" to cause her harm. ECF No. 24.

Defendants argue in their Motion for Summary Judgment that Plaintiff (1) failed to state an official capacity claim against any Defendant; (2) failed to exhaust her sexual assault and harassment claims prior to filing this lawsuit; (3) failed to state a claim against Defendants Ledbetter, Wright, Rowe, Martin, and Lingo; (4) failed to show Defendant Orel's actions amount to a constitutional violation;[3] (5) failed to show any medical care was denied; and (6) failed to show the conditions of her lock down violated the Eighth Amendment.

Plaintiff responded arguing (1) Defendants only sent one request for any other facilities to house her; (2) HSCJ has a policy of not housing females; (3) Defendants' did not closely monitor her while she was housed in the HSCJ; (4) she did not file any grievances regarding the alleged sexual assault while housed at the HSCJ because inmate Fears threatened her life; (5) she performed the sexual acts because she feared for her life; (6) Defendants violated policy when they

[3] The Court notes it did not address Plaintiff's claims against each Defendant specifically because Plaintiff did not delineate in her second Amended Complaint specific facts and claims against specific defendants. Further, as explained below each of Plaintiff's claims fail as a matter of law. Therefore, for the purpose of this Report and Recommendation, the Court finds generally addressing each of Plaintiff's claims is sufficient.

allowed 309 inmates access to jail keys; (7) Defendants were not allowed to transfer Plaintiff to a female facility due to Judge Williams' order; and (8) Defendants' assertion that they do not possess video regarding Plaintiff's allegations is untrue.[4] ECF No. 53.

Further, Plaintiff attached to her Response: (1) the HSCJ's statewide request for transfer of Plaintiff; (2) the HSCJ's policy on holding females; (3) the statement inmate Fears gave the ADC regarding the sexual assault; (4) a portion of Plaintiff's lie detector test results; (5) HSCJ's policy regarding jail keys; (6) a memo from Defendant Rowe to the Hot Springs County Medical Psych Unit regarding Plaintiff; (7) Defendants' Response to Motion for an Order Compelling Discovery; and (8) Letter from defense counsel in this matter regarding video evidence.

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all

[4] Plaintiffs last two arguments are irrelevant to the issues before the Court on summary judgment. Therefore, the Court did not address these arguments herein.

evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

The Court recognizes that it was difficult to ascertain, from Plaintiff's second Amended Complaint, what legal basis Plaintiff relied upon for each of her claims, however, a through review of Plaintiff's second Amended Complaint, the docket in this matter, and the instant briefing the Court has determined that Plaintiff intended to assert Eighth, Fourteenth and possibly Fourth Amendment claims. Specifically, the Court interprets Plaintiff's second Amended Complaint to assert conditions of confinement claims under the Eighth Amendment, Equal Protection claims under the Fourteenth Amendment, and privacy rights under the Fourth Amendment. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004) (holding that the court should liberally construe a *pro se* plaintiff's complaint, however, the plaintiff must still allege sufficient facts to support their claim).[5]

### A. Sexual assault and harassment

Defendants argue Plaintiff failed to exhaust her claims relating to the alleged sexual assault and harassment by inmate Fears and Defendant Orel because she did not file any grievances at the HSCJ on these claims. Plaintiff responded admitting that she did not file any grievances related to the sexual assault and harassment while housed at the HSCJ. Plaintiff argues that she did not file

[5] Plaintiff also asserted a failure to protect claim but the merits of that claim will not be reached as the claim was not properly exhausted as explained below.

grievances because she feared inmate Fears would take action against her for complaining. Plaintiff did report the alleged sexual assault and harassment once she was transferred to the ADC.

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before and inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a). The benefits of the PLRA exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 2019 (2007). It is the burden of the defendants to prove that the inmate has failed to exhaust her administrative remedies. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005).

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687 (2001)).

Here, Plaintiff does not dispute that the HSCJ had a grievance procedure and that she utilized this procedure relating to her other claims. ECF No. 49-2, 49-6. Plaintiff also does not dispute that she failed to file grievances relating to the alleged sexual assault and harassment. ECF No. 49-6. Plaintiff only argues that she did not file a grievance relating to the sexual assault because she was

afraid of inmate Fears. Fear of another inmate does not fit into the two exceptions announced by the Eighth Circuit, and there is no case law to support excusing Plaintiff's failure to exhaust based on her fear of another inmate. *See Gibson,* 431 F.3d at 341; *Foulk*, 262 F.3d 687.

Accordingly, there are no genuine issues of material fact as to whether Plaintiff failed to exhaust her administrative remedies relating to the alleged sexual assault and harassment. Therefore, Plaintiff's claims, against all Defendants, relating to the sexual assault and harassment should be dismissed without prejudice pursuant to 42 U.S. C. § 1997e(a).

B. Official capacity claims

Plaintiff indicated in her second Amended Complaint that her claims were against Defendants in both their official and individual capacities. Defendants argue Plaintiff failed to show any policy or custom of Hot Springs County which resulted in a violation of her constitutional rights. Plaintiff contends in her Response, that HSCJ has a "policy in place specifying that females are not to be housed at the [HSCJ]" and also a policy of not allowing inmates access to jail keys. Plaintiff further argues that Defendants violated these two policies by housing her at the HSCJ and allowing inmate Fears access to jail keys. ECF No. 53.

Under section 1983, a defendant may be sued in either his individual capacity, or his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112

> S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). An official capacity claim against Defendants is essentially a claim against Hot Springs County. "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiff has not made any allegations or presented any facts showing a policy or custom of Hot Springs County caused the constitutional violations she alleges. To the contrary, Plaintiff alleges violations of HSCJ policy caused her to be sexually assaulted and harassed. Plaintiff claims the HSCJ policy was not to house female inmates and not to allow 309 inmates access to jail keys. Therefore, the alleged incidents of Plaintiff being housed at HSCJ and inmate Fears being allowed access to jail keys were, according to Plaintiff, actions taken a violation of HSCJ policy not pursuant to HSCJ policy. Further, Plaintiff presents no evidence that these policy violations are a custom of the HSCJ. Plaintiff's claims relating to housing her at the HSCJ and inmate Fears access to the jail keys are nothing more than assertions of violation of HSCJ policy. There is no section 1983 liability for violating prison policy. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, Hot Springs County cannot be held liable based merely on the fact

it employs Defendants. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fails as a matter of law.

C. Denial of medical care claim

Plaintiff claims in her second Amended Complaint that she was denied medication. Plaintiff presents no other facts or allegations regarding this claim. Defendants argue Plaintiff was not denied medication and produced an affidavit of Amie Martin, HSCJ Administrator, stating she was unaware of any instances Plaintiff was denied medication. ECF No. 49-2. Defendants also submitted jail logs indicating Plaintiff was given medication. ECF No. 49-1. Additionally, Defendants produced evidence showing Plaintiff attempted suicide by swallowing a handful of her own medication she hoarded. ECF No. 49-1. Plaintiff did not respond to this evidence submitted by Defendants, nor did she produce any evidence to dispute the evidence placed in the record by Defendants.

Accordingly, while the denial of medication may arise to a constitutional violation in some instances, here there is no issue of fact as to whether Plaintiff was denied medication. The record clearly indicates she was given medication, and there is no evidence to show any medication was denied. Therefore, Plaintiff's denial of medical care claim, specifically denial of medication, must fail as a matter of law. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

D. Lockdown

Plaintiff claims she was locked down for twenty-four (24) hours a day while housed in the HSCJ. Defendants argue this is a conditions of confinement claim because Plaintiff does not allege

she was locked down for any punitive reason. The Court disagrees with this framing of Plaintiff's claim. Plaintiff specifically implicates the Equal Protection Clause of the Fourteenth Amendment in her second Amended Complaint in relation to this claim. While the Court disagrees with Defendants characterization of Plaintiff's claim, Plaintiff was given the opportunity to correct this characterization in her Response and she did not. For this reason, and in an effort to be through, the Court will analyze Plaintiff's lock down claim as a conditions of confinement claim (as framed by Defendants) and as an equal protection claim (as interpreted by the Court.)

First, the Court will enumerate the undisputed facts from the record. Plaintiff was housed in a holding cell in the booking area of the HSCJ and this cell was at least 43.3 square feet in size. Plaintiff was housed alone in this cell. According to the HSCJ Jail Administrator's affidavit, Plaintiff was locked down "the majority of the time for security issues and out of necessity due to the fact that we had to house her in a holding cell." Plaintiff was also not allowed out of her cell unless closely monitored for safety reasons (to keep her separated from the all male population) and because she was a suicide risk. Further, Plaintiff was not locked down twenty-four (24) hours each day. She was allowed out of her cell to walk around and to go outside and smoke. HSCJ Administrator's Affidavit, ECF No. 49-2.

According to HSCJ daily logs, Plaintiff entered the HSCJ on May 16, 2011. She was transported to the emergency room on May 21, 2011 to be treated for a suicide attempt (swallowing a handful of her own prescription medication) and returned to HSCJ on May 22, 2011. She was transported to the psychiatric hospital on May 25, 2011 and returned to the HSCJ on May 30, 2011. Plaintiff was released from HSCJ on June 21, 2011. In total, Plaintiff spent approximately thirty-two (32) days housed in the holding cell at the HSCJ. According, to HSCJ

daily logs, Plaintiff was taken outside to smoke at least once everyday (except for her book in day), and multiple times on some days. In addition to her smoke breaks, Plaintiff was also allowed out to shower at least ten (10) times during this thirty-two (32) day period. Finally, Plaintiff was allowed out to use the phones, have visitors, or sit on the bench in booking at least seven (7) separate times during this period. Daily Jail Logs, ECF No. 49-1.

Additionally, Plaintiff attempted suicide by taking pills and cutting her wrist on at least three occasions while housed at the HSCJ. Daily Jail Logs, ECF No. 49-1.

Finally, Plaintiff was afforded unusual privileges including wanted and needed hygiene items and snacks from Wal-mart. Plaintiff would make lists of the items she wanted or needed and someone would go buy those items and bring them back to her at the jail. Daily Jail Logs, ECF No. 49-1.

1. Condition of confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998) (citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Here, Plaintiff was a pre-trial detainee at the time of the alleged incidents, however, the Eighth Circuit applies the same deliberate indifference standard to pretrial detainees as applied to convicted inmates. *See Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to claims, brought by pretrial detainees and convicted inmates, that prison officials failed to provide adequate food, clothing, shelter, etc.). The Eighth Amendment to the United States Constitution

prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

The uncontroverted evidence on the record indicates Plaintiff was not locked down in her holding cell for twenty-four (24) hours each day, however, it does indicate she was locked down for "the majority of the time." Further, it is undisputed that Plaintiff was allowed outside to smoke daily, and provided shower, phone, and visitation privileges regularly. Additionally, the record indicates Plaintiff was provided at least 43.3 square feet of living space inside the holding cell. Finally, it is undisputed that Plaintiff was the only female being housed in an all male facility and she was a suicide risk.

Defendants properly argue that the space provided to Plaintiff in her holding cell was constitutionally adequate. *See Hall v. Dalton,* 34 F.3d 648, 650 (8th Cir. 1994) (holding that inmates held in a cell for more than sixteen hours per day, for longer than one week, must be provided at least 43.3 square feet of living space). However, inmates held under the conditions enumerated in *Hall* also must *ordinarily* be given an opportunity to exercise at least one hour daily. *Id.* 34 F.3d at 650, n. 2 (emphasis added) (citing *Campbell v. Cauthron,* 623 F.2d 503 (8th Cir. 1980)).

Initially, the Court notes that Plaintiff's situation was in no way ordinary. She was a female inmate being housed in an all male facility and she was a suicide risk. For these reasons, the Court finds the daily opportunity to exercise requirement of *Campbell* does not apply to Plaintiff, however, the Court expressly limits its reasoning to the facts of this case.

Further, the undisputed facts here show that Plaintiff was allowed out of her cell daily to go outside to smoke and also afforded phone, shower, and visitation privileges regularly during her thirty-two (32) day lock down. Further, Plaintiff was not only provided food, water, and shelter, along with the above mentioned privileges, she was also allowed to make lists of needed and wanted items (hygiene items and snacks) and have those items bought and delivered to her. Such facts do not indicate Plaintiff was deprived of the minimal civilized measure of life's necessities. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (inmate locked down for 37 days and deprived of yard and gym call and chapel for that time did not state a violation of his Eighth Amendment rights because he failed to show his situation was cruel and unusual); *Rahman X. v. Morgan,* 300 F.3d 970, 974 (8th Cir. 2002) (inmate denied outside recreation for three months failed to establish deliberate indifference to his health). *See also Williams v. Delo,* 49 F.3d 442,

445 (8th Cir. 1995) (four days in a strip cell with no clothes and the water to the toilet and sink shut off did not deny the inmate the minimal civilized measure of life's necessities); *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir. 1989) ("Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months."). *Compare Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir 2003) (inmate forced to sleep next to a toilet and have urine splashed on him while he slept for approximately five weeks did state a conditions of confinement claim sufficient to survive summary judgment); *Howard v. Adkison,* 887 F.2d 134 (8th Cir. 1989) (inmate living in a cell covered in filth and human waste for two years does violate the constitution).

Moreover, Plaintiff has presented no evidence to show Defendants were deliberately indifferent to her health or safety by keeping her locked down in the holding cell. To the contrary, the evidence shows Defendants kept Plaintiff locked down to protect her from herself (based on her suicide attempts and threats) and also to protect her from the all male population of the HSCJ. Had Defendants allowed Plaintiff to enter the general population of the jail or remain outside of her cell for longer periods of time with less supervision they may have violated Plaintiff's constitutional rights. *See Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012) (inmates have a clearly established constitutional right to be protected from the known risk of suicide) (quoting *Yellow Horse v. Pennington Cnty.,* 225 F.3d 923, 927 (8th Cir. 2000); *see also Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011) ("Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.") (citing *Farmer v. Brennan*, 511U.S. 825, 833 (1994)).

Accordingly, there are no genuine issues of material fact regarding Plaintiff's lock down claim, based on a conditions of confinement theory and this claim, against all Defendants, must

fail.

2. Equal protection

The Court believes Plaintiff intended her claim regarding lock down at the HSCJ to be one for violation of her equal protection rights under the Fourteenth Amendment. Plaintiff specifically states in her Amended Complaint: "Under the equal protection clause every person in the United States, including prisoners are guaranteed 'the equal protection of the law!'" ECF No. 24, p. 8. Plaintiff goes on to list the elements of an equal protection claim. Therefore, the Court construes Plaintiff's lockdown claim as one for a violation of the equal protection clause.

Before reaching the merits of Plaintiff's equal protection claim, the Court must first determine whether Plaintiff is similarly situated to those she claims received favorable treatment. "The Equal Protection Clause generally requires the government to treat similarly situated people alike. Dissimilar treatment of dissimilarly situated persons does not violate equal protection. Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action and so it is necessary to precisely define the claim in order to determine what government action is being challenged." *Roubideauz v. North Dakota Dept. of Corrections and Rehabilitation,* 570 F.3d 966, 974 (8th Cir. 2009) (internal quotations and citations omitted).

The Court first notes that Plaintiff did not expressly allege in her second Amended Complaint that anyone received favorable treatment through Defendants actions. Instead, she

claims she was the only female held in the all male facility because Defendants were bias toward her. Further, Plaintiff argues in her Response, that Defendants only attempted once to transfer her to another facility equipped to house female residents, and Defendants should have sent her out of state if there was not an Arkansas female facility to house her. The Court interprets these arguments to assert it was Defendants' failure to transfer Plaintiff to a facility that housed females as the challenged action. However, there is no indication in the second Amended Complaint or on the record as to what persons Plaintiff claims received favorable treatment through a transfer to a facility that housed females.

There is no allegation by Plaintiff that other female inmates were booked into the HSCJ and then transferred to separate facilities during the time Plaintiff was housed at the HSCJ. More importantly, there is no evidence on the record to indicate any similarly situated person was booked into the HSCJ and then transferred to another facility during the time Plaintiff was housed at the HSCJ. Plaintiff was not only a female inmate, she was also an inmate that required special attention and accommodations. The record indicates that Defendants sent a request to every jail in the State of Arkansas in an attempt to transfer Plaintiff to a facility with female accommodation. These facilities responded indicating they could not accept Plaintiff either because their facility did not house females, their facility was full, or they could not house Plaintiff because of her medications and known psychiatric condition. ECF No. 49-2; ECF No. 53. There is no evidence on the record indicating any persons similarly situated to Plaintiff were booked into HSCJ and then transferred out during the time period Plaintiff was housed at HSCJ. Accordingly, there is no evidence, or allegation for that matter, that any similarly situated persons received favorable treatment by being transferred out of the HSCJ to a female facility during the time

Plaintiff was housed there.

Furthermore, if Plaintiff is arguing that she should have been integrated into the male population rather then being locked down in order to separate her from the male population, the Court finds this argument unconvincing. "It is beyond controversy that male and female prisoners may lawfully be segregated into separate institutions within a prison system. "Gender-based prisoner segregation and segregation based upon prisoners' security levels are common and necessary practices." *See Klinger v. Department of Corrections,* 107 F.3d 609, 615 (8th Cir. 1997)

Accordingly, there are no genuine issues of material facts as to Plaintiff's equal protection claim and that claim fails as a matter of law.

E. Suicide watch

Plaintiff also claims in her Amended Complaint that she was put on suicide watch without her clothes and cared for by male officers and 309 inmates. Plaintiff claims this was cruel and unusual punishment. The Court construes this claim as one for conditions of confinement or possibly a privacy violation.

The record indicates Plaintiff made multiple threats to commit suicide while housed at the HSCJ and actually attempted suicide on May 18, 2011 by trying to slit her wrists, and on May 21, 2011 by swallowing twenty-five pills.[6] Plaintiff was transported to the hospital for treatment on May 21, 2011. She was returned on May 22, 2011. Upon re-entry to the HSCJ, Plaintiff was stripped and searched by Officer Rowe, a female officer. During this search a razor blade was found in Plaintiff's bra. Plaintiff was then placed in her cell, without her clothes, on suicide watch.

[6] The record indicates Plaintiff also made subsequent threats and attempts at suicide but because these incidents occurred after the incident complained of by Plaintiff, the Court will not enumerate them here.

Plaintiff had a blanket during the time she was without her clothes. Plaintiff's clothes were returned to her less than four hours later. ECF No. 49-1. Further, the record indicates the bean hole and window of Plaintiff's cell were covered while Plaintiff was in an undressed state. ECF No. 49-2. Plaintiff does not dispute these facts.

As the Court stated above, a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

There is nothing in the record to indicate Plaintiff's four hour stay in her cell without clothing deprived her of the minimal civilized measures of life's necessities. Further, there is no evidence that Defendant Rowe's actions were deliberately indifferent. See *O'Leary v. Iowa State Men's Reformatory,* 79 F.3d 82, 83-84 (8th Cir. 1996) (an inmate deprived of underwear, blankets, mattress, exercise, and visits for several days does not violate the Eighth Amendment); *Williams v. Delo,* 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, water, bedding, legal mail, and hygiene supplies does not violate the Eighth Amendment).

Furthermore, even if Plaintiff's claim is one for privacy violations, based on the undisputed facts on the record, it must fail as a matter of law. While Plaintiff claims in her second Amended Complaint that male officers and 309 inmates were allowed to care for her while she was in her undressed state, Plaintiff did not contest Defendants' evidence that it was a female officer that stripped her, and the openings of her cell were covered to prevent male officers and inmates from seeing her in the undressed state.

The Eighth Circuit has recognized that a prison's security and safety of the inmate outweigh privacy concerns in situations similar to the one presented here. *See Hill v. McKinley,* 311 F.3d 899, 903 (8th Cir. 2002) (it is not a violation of a prisoner's "Fourth Amendment privacy rights for a male guard to require a loud and violent female prisoner to disrobe in his presence before placing her in a padded cell for her own safety.") (citing *Timm v. Gunter,* 917 F.2d 1093, 1102 (8th Cir. 1990) (opposite sex surveillance performed on the same basis as same-sex surveillance is not unreasonable where justified by safety and equal employment concerns); *Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (visual body cavity searches conducted in view of other prisoners upheld absent substantial evidence that it was an exaggerated response to security concerns)). Here, it is undisputed that Plaintiff had previously attempted suicide and a razor blade was found in her bra before she was placed in her cell in an undressed state. Based on precedent, there are no genuine issues of material fact as to any privacy claim Plaintiff may have asserted.

Accordingly, there are no genuine issues of material fact relating to Plaintiff's stripping claim under a conditions of confinement or privacy theory, and the claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, I recommend Defendants' Motion for Summary Judgment (ECF

No. 48) be **GRANTED** and Plaintiff's claims relating to the alleged sexual assault and harassment be dismissed without prejudice pursuant to 42 U.S. C. § 1997e(a) and Plaintiff's official capacity, conditions of confinement, equal protection, and privacy claims be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 29th day of July 2014.**

s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE